FILED
United States Court of Appeals
Tenth Circuit

August 19, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.; SHANE
PAUL; STEVEN BUSSONE; DALE
STEWART; WILLIAM MECK; JEFF
MATHEWS; RICHARD LEE SISEMORE,

      Plaintiffs - Appellants,

v.

USIS COMMERCIAL SERVICES, INC.,
doing business as DAC Services,

      Defendant - Appellee.

No. 06-1430

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 04-CV-1384-REB-CBS)**

---

Paul D. Cullen, Sr. (Randall S. Herrick-Stare and Paul D. Cullen, Jr., with him on
the briefs), The Cullen Law Firm, PLLC, Washington, D.C., for Plaintiffs-
Appellants.

Jennifer M. Palmer (Heather D. Jorgensen with her on the brief), Senter Goldfarb
& Rice, L.L.C., Denver, Colorado, for Defendant-Appellee.

---

Before **BRISCOE**, **EBEL**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

The plaintiffs, Shane Paul, Steven Bussone, Dale Stewart, Kenneth Hinzman, and William Meck,[1] are individual truck drivers. They brought suit contending the defendant, USIS Commercial Services, Inc., violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x, in its procurement and dissemination of their employment histories. They claimed that USIS failed to comply with FCRA's notice and authorization requirement when it procured information from former employers regarding their job performance. 15 U.S.C. § 1681b(b). The plaintiffs also charged the reports produced by USIS are routinely inaccurate and USIS failed to follow reasonable procedures to assure maximum possible accuracy, as required by FCRA. 15 U.S.C. § 1681e(b). The plaintiffs moved for class certification and the district court denied the motion.

The plaintiffs' claims went to trial. The district court granted judgment as a matter of law with respect to some of the plaintiffs' accuracy claims. It also determined that the information procured from former employers by USIS did not constitute "consumer reports" as defined by FCRA and was therefore not regulated by the statute. 15 U.S.C. § 1681a(d). During USIS's presentation of its case, the plaintiffs objected to the admission of evidence regarding the employer trucking companies' use of the reports they obtained from USIS. The objection

---

[1]Owner-Operator Independent Drivers Association, Inc., was stricken as a plaintiff for lack of standing. It does not appeal that decision.

was overruled.  The remaining accuracy claims went to the jury, which found in favor of USIS.

Plaintiffs appeal the district court's ruling that the disputed reports are not consumer reports procured for employment purposes, its evidentiary ruling, and its denial of class certification.  Taking jurisdiction pursuant to 28 U.S.C. § 1291, this court **AFFIRMS**.

## I.  Background

The Department of Transportation requires motor carriers to investigate drivers' employment histories and driving records before hiring.  *See* 49 C.F.R. § 391.23 (2008).  USIS[2] sells a service to assist motor carriers in complying with this requirement.  USIS is an investigation and security services company that compiles and disseminates truck driver employment histories.  USIS gathers these histories from individual motor carriers who subscribe to USIS's service.  The companies providing the information to USIS fill out a Termination Record Form (TRF) for truck drivers who have left the company.  The TRF contains seventeen different sections such as "eligible for rehire," "reason for leaving," and "work record."  Each section lists several descriptors, which employers are instructed to circle if applicable to the driver.  For example, the "work record" section contains twenty-eight descriptors, including "superior," "outstanding," "excessive

[2]USIS does business under the name "DAC Services."

complaints," "cargo loss," "late pick up/delivery," and "failed to report accident." The employer is permitted to circle as many descriptors as applicable. The employer may choose to circle "other" and provide a short explanation, but the form provides no  mechanism for the employer to explain why they chose a given descriptor.

The TRFs are transmitted to USIS by the motor carrier and USIS keys in the codes associated with each descriptor. The TRFs are then compiled to form the employee's Employment History Report (EHR). For a fee, a potential employer may request an applicant's EHR. Employers also receive a credit toward purchasing USIS services each time they submit a completed TRF.

The plaintiffs brought suit, alleging USIS's practices violated FCRA. Congress enacted FCRA in 1970 to protect consumer privacy and to ensure fair and accurate credit reporting. 15 U.S.C. § 1681(a); *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2205-06 (2007). FCRA regulates the distribution of consumer reports and sets out certain procedures and standards that consumer reporting agencies must comply with when preparing consumer reports. The statute requires that in preparing a consumer report a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). It also mandates that a consumer reporting agency may only "furnish a consumer report for employment purposes" if the entity obtaining the report has received the consumer's authorization to procure

the report.  *Id.* § 1681b(b)(1).  FCRA provides civil liability for willful or negligent failure to comply with the statute.  15 U.S.C. §§ 1681n, 1681o.

In the district court, the plaintiffs contended that the TRFs are "consumer reports" obtained for "employment purposes" as defined by FCRA and that the employers providing the TRFs to USIS must therefore comply with the statute's requirements.[3]  They further alleged that USIS has not met the requirements of FCRA in procuring TRFs from employers.  In particular, the plaintiffs challenged the TRFs' accuracy and USIS's failure to provide notice when procuring a TRF.[4]  The plaintiffs moved for class action certification under Fed. R. Civ. P. 23.  The district court denied the motion.  It concluded that questions of fact and law affecting individual plaintiffs predominated over those common to the proposed class.

The trial began on August 21, 2006.  As provided in the Final Pretrial Order, the plaintiffs presented four statutory claims: unlawful procurement of

[3]The parties do not dispute that the EHRs are consumer reports and USIS must comply with FCRA in their preparation and dissemination.  *See Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1216 (10th Cir. 2002).

[4]The complaint listed four counts: declaratory and injunctive relief for violations of FCRA (count 1), unlawful procurement and use of consumer reports (count 2), compensatory and punitive damages (count 3), and unjust enrichment and restitution (count 4).  USIS filed a motion to dismiss counts 1, 2, and 4 pursuant to Fed. R. Civ. P. 12(b)(6).  The district court concluded that equitable relief is not available under FCRA and accordingly dismissed counts 1 and 4.  The plaintiffs do not appeal this dismissal.  The court, however, denied the motion as to count 2.

consumer reports, taking adverse action by receiving inaccurate TRFs without discharging notice obligations, willfully or negligently taking adverse action by selling inaccurate EHRs without discharging notice obligations, and willfully or negligently failing to assure maximum possible accuracy in its TRFs and EHRs. 15 U.S.C. § 1681b(b). At the close of the plaintiffs' case, USIS moved to dismiss under Fed. R. Civ. P. 50(a)(1). USIS argued that the plaintiffs had not shown that the TRFs were consumer reports. USIS also argued that the plaintiffs had not met their burden with respect to the inaccuracy claims.

The district court concluded that as an essential element of the first three claims, the plaintiffs were required to demonstrate USIS procured the TRFs for "employment purposes." 15 U.S.C. § 1681b(a)(3)(B). FCRA defines "employment purposes" as "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h). The district court determined that because USIS did not intend to evaluate the consumer, it did not procure the reports for "employment purposes," even though USIS anticipated such future use. The district court also concluded the plaintiffs were required to demonstrate that information in their TRFs or EHRs were inaccurate. It determined that there was no evidence of any inaccuracy in plaintiffs Bussone's and Stewart's TRFs and EHRs. With respect to plaintiffs Paul, Mathews, Sisemore and Meck, the district court determined they had established an evidentiary basis on which a reasonable jury could conclude

-6-

their EHRs contained inaccuracies, that USIS negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of these EHRs, and that USIS's negligence caused actual economic damages. It also determined, however, that those plaintiffs did not establish an evidentiary basis sufficient for a reasonable jury to award damages for emotional distress based on the alleged inaccuracies. Accordingly, the district court granted USIS judgment as a matter of law as to the first three claims, Bussone's and Stewart's inaccuracy claims, and all plaintiffs' claims for emotional distress damages.

After the district court's ruling, the plaintiffs moved to amend their complaint. They argued that FCRA provides that a consumer reporting agency may only furnish a consumer report under specific conditions. 15 U.S.C. § 1681b(a) (authorizing procurement of consumer reports for only enumerated purposes). They claimed USIS's procurement of TRFs from the employers did not fall under any of the statutory authorizations. The district court denied the motion. It concluded that while FCRA's general definition of "consumer report" applied to the TRFs,[5] TRFs fall under a statutory exclusion. The statute lists

---

[5]Under FCRA,

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or

(continued...)

several "exclusions" to the term "consumer report," including any "report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(I). The parties contested who had the burden of proof regarding the application of the exclusion. The district court concluded the plaintiffs bore the burden of proving the exclusion did not apply. It then found that no reasonable jury could conclude the TRFs at issue contained information that did not solely relate to the experiences of the person making the report.

During the course of the trial the plaintiffs objected to evidence elicited and presented by USIS regarding trucking company hiring practices. USIS presented testimony relating to steps that companies take after receiving an EHR to follow up on the information in the report. The plaintiffs argued this evidence was irrelevant and should not be heard by the jury. The district court overruled the objection.

---

[5](...continued)
> expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>> (B) employment purposes; or
>> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

At the close of trial, USIS moved for dismissal of the remaining claims. The district court granted the motion as to the negligence claims. It found the plaintiffs had failed to establish evidence from which a reasonable jury could conclude USIS negligently failed to follow reasonable procedures to ensure accuracy of the EHRs. It sent the remaining claims, willful failure to ensure accuracy of the EHRs, to the jury. The jury returned a verdict in favor of the defendants on the remaining claims.

**II. Discussion**

The plaintiffs present three challenges to the district court's rulings. First, they argue the district court erred when it found that TRFs are not consumer reports. Second, the plaintiffs contest the district court's evidentiary rulings on how employers use EHRs. Finally, they claim the district court committed error when it denied the plaintiffs certification as a class.

*A.  TRFs and Consumer Reports*

FCRA includes in its definition of a "consumer report" any communication bearing on a consumer's "character, general reputation, personal characteristics, or mode of living" which is used to establish eligibility for "employment purposes." 15 U.S.C. § 1681a(d)(1). The statute, however, under a section titled "exclusions," explains "the term 'consumer report' does not include . . . any . . . report containing information solely as to transactions or experiences between the

consumer and the person making the report." *Id.* § 1681a(d)(2)(A)(I). The parties contest whether TRFs fall under this exclusion.[6]

As a preliminary matter, the plaintiffs also argue that the exclusions are affirmative defenses that must be plead pursuant to Fed. R. Civ. P. 8(c).[7] Because the defendants did not plead § 1681a(d)(2) as an affirmative defense, the plaintiffs maintain it was waived. Even assuming that the provisions of § 1681a(d)(2) are affirmative defenses, the issue was tried by the implied consent of the parties and the plaintiffs' argument is waived. Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or

---

[6]There is a serious question of whether the motor carriers even meet the threshold statutory definition of a "consumer reporting agency." 15 U.S.C. § 1681a(f). FCRA defines a consumer reporting agency as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers *for the purpose* of furnishing consumer reports to third parties." *Id.* (emphasis added). The district court concluded the motor carriers met this broad definition. A principled argument could be made, however, that the motor carriers do not maintain records of their employees' tenure for the purpose of providing information to USIS. *See Ollestad v. Kelley*, 573 F.2d 1109, 1111 (9th Cir. 1978) ("It cannot be contended seriously that agencies such as the F.B.I. compile information on persons, particularly on former employees as is the appellant, *for the purpose* of furnishing consumer reports to third parties."). This argument, however, was not adequately raised on appeal.

[7]The plaintiffs also argue the district court erred when it determined the plaintiffs bore the burden of showing that FCRA's exclusions to the definition of "consumer report" did not apply. USIS maintains that FCRA lists exclusions, not exceptions, and that the plaintiff bears the burden of proving the exclusion does not apply. We decline to reach this issue. Even if USIS had the burden of proving the exclusion, it met this burden. Regardless of which party bore the burden of proof, the result would be the same.

-10-

implied consent, it must be treated in all respects as if raised in the pleadings.")
USIS first raised the statutory exclusion in its motion to dismiss. It revived this
argument when it moved for judgment as a matter of law at the close of the
plaintiffs' case. The plaintiffs responded to this argument on the merits in its
responses to both motions. In addition, this issue was preserved in the Final
Pretrial Order and was addressed by both parties in their trial briefs. The
plaintiffs were fully aware of USIS's intention of raising this issue and had a full
and fair opportunity to defend against it. By responding to the defendant's
arguments in this way, the plaintiffs consented to the litigation of the applicability
of the exclusion. *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275,
1279-80 (10th Cir. 1998).

The district court concluded that, based on the evidence presented at trial,
no reasonable juror could have found the TRFs contained information about
anything other than the experiences between the drivers and the motor carriers.
This court reviews de novo a district court's entry of judgment under Rule 50(a).
*Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th
Cir. 2003). In reviewing the grant of judgment as a matter of law, "[t]he question
is not whether there is literally no evidence supporting the nonmoving party but
whether there is evidence upon which the jury could properly find for that party."
*Id*. (alterations and quotation omitted).

The plaintiffs argue the evidence at trial demonstrated TRFs routinely referred to interactions that could not be categorized as solely between drivers and their former employers and the exclusion, therefore, cannot apply.[8]  This argument fundamentally mischaracterizes the nature of the exclusion.  Under the plaintiffs' construction, the exclusion's application would be limited to incidents involving *only* the employer and the employee.  It is not necessary, however, that the experience must be exclusively between the employer and employee.  Rather, the exclusion applies to any first-hand experiences.  *Hodge v. Texaco, Inc.*, 975 F.2d 1093, 1096 (10th Cir. 1992).

The plaintiffs point to evidence at trial that they "routinely interacted with a wide variety of third parties" in the course of their employment.  The drivers testified that they interacted with many people other than their employers, such as

---

[8]The plaintiffs also argue the trial court reversed its earlier determination that the employer trucking companies supplying TRFs are "consumer reporting agencies."  This argument is without merit.  First, a district court is free to revisit its interlocutory orders prior to the entry of a final judgment.  Fed. R. Civ. P. 54(b); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 n.14 (1983).  Furthermore, the district court did not reverse its earlier ruling.  The definitions of "consumer report" and "consumer reporting agency" are circular.  A person cannot be a consumer reporting agency unless it issues consumer reports. 15 U.S.C. 1681a(f).  The district court's ruling that the TRFs are not consumer reports, therefore, did implicate whether the employer trucking companies are consumer reporting agencies.  In ruling on the 12(b)(6) motion, however, the district court explained that, it could not determine whether the TRFs were consumer reports under the Rule 12(b)(6) standard.  Its later ruling, issued after the plaintiffs had presented their evidence at trial, cannot be characterized as a reversal.

-12-

shippers, receivers, Department of Transportation officials, and the public. As USIS acknowledges, information regarding these interactions are implicated in some of the descriptors, such as "company policy violation," "cargo loss," and "late pickup and delivery." That the drivers interacted with these third parties does not, however, demonstrate that these were not the experiences of the employers. For example, the plaintiffs elicited testimony on redirect examination from USIS senior manager Kent Ferguson that "cargo loss" refers to cargo that belongs to a third party, i.e. the customer of the motor carrier. As such, its loss implicated the third party. As Ferguson explained, however, the cargo was also the responsibility of the motor carrier which contracted with the cargo owner for its transport. Its loss, therefore would also be the first-hand experience of the motor carrier.

This approach also comports with the Federal Trade Commission's interpretation of this provision.[9] In its Commentary on FCRA, the Federal Trade

---

[9]FCRA gives the Federal Trade Commission primary enforcement responsibilities. 15 U.S.C. § 1681s(a) ("The Federal Trade Commission shall have such procedural, investigative, and enforcement powers, including the power to issue procedural rules in enforcing compliance with the requirements imposed under this subchapter and to require the filing of reports, the production of documents, and the appearance of witnesses as though the applicable terms and conditions of the Federal Trade Commission Act were part of this subchapter.") Eight other agencies also have enforcement powers under the Act. 15 U.S.C. § 1681s(b). The Federal Trade Commission was not given the authority to promulgate regulations under FCRA. *See Equifax Inc. v. Fed. Trade Comm'n*, 678 F.2d 1047, 1049 n.7 (11th Cir. 1982).

Commission noted that § 1681a(d)(2)(A)(I) "applies to reports limited to transactions or experiences between the consumer and the entity making the report (e.g., retail stores, hospitals, *present or former employers*, banks, mortgage servicing companies, credit unions, or universities)." 16 C.F.R. Pt. 600, App. D § 603(d)(7)(A) (emphasis added). The Federal Trade Commission also issued a Staff Opinion Letter in response to an inquiry from a public school district conducting reference checks of prospective employees. That letter explained "FCRA would not apply to any communication by a previous employer about the applicant's job performance because [§ 1681(d)(2)(A)(I)] specifically exempts 'experiences between the consumer and the person making the report' from the definition of 'consumer report' in the FCRA." Staff Opinion Letter from Fed. Trade Comm'n (July 10, 1992), 1998 WL 34323734. The Commentary and Letter are not formal rulemakings and not entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Counsel*, 467 U.S. 837, 842-44 (1984). *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Such documents, however, may be considered for their persuasive value. *Id*.

That the experiences of the motor carrier may involve third parties does not mean they are no longer the first-hand experiences of the carrier. Employers completing TRFs were asked questions that only pertained to their first-hand knowledge gained by employing the consumer. The TRFs contain the same kind

-14-

of information found in a typical letter of reference from a former employer and are not subject to the requirements of FCRA.[10]

## B. Evidence of Industry Practice

FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The Federal Trade Commission has explained "when a consumer reporting agency learns or should reasonably be aware of errors in its reports that may indicate systematic problems . . . it must review its procedures for assuring accuracy." 16 C.F.R. Pt. 600, App. D, § 607(b)(3)(A). To demonstrate a "willful" violation pursuant to § 1681n(a), a plaintiff must prove the defendant demonstrated a "reckless disregard of statutory duty." *Safeco Ins. Co.*, 127 S. Ct. at 2208.

At trial, the plaintiffs argued the defendants violated FCRA by willfully disseminating inaccurate EHRs, which the parties stipulate are consumer reports, and failing to take measures to ensure their maximum possible accuracy.[11] 15

---

[10]The plaintiffs also dispute the district court's conclusion that TRFs are not procured for "employment purposes." Because this court holds TRFs are not consumer reports, we need not reach this issue.

[11]Only the plaintiffs' claims of willful violations went to the jury. 15 U.S.C. § 1681n. The district court granted USIS's motion for judgment as a matter of law with respect to the plaintiffs' negligence claims. 15 U.S.C. § 1681o. The plaintiffs do not contest this ruling.

U.S.C. § 1681e(b). This court determined in *Cassara* that, under FCRA, important data must be communicated in "categories about which there is genuine common understanding and agreement." 276 F.3d at 1225. The plaintiffs argue that the descriptors used by USIS are so vague as to lack any precise understanding and therefore fail the test of accuracy. For example, the plaintiffs point to the term "cargo loss," which may be selected by a motor carrier to describe a former employee. The plaintiffs argue the term tells the potential employer nothing about the extent of the loss, the reason for the loss, or whether it was the driver who was responsible for the loss. This lack of precision, they contend, constitutes a violation of FCRA.

In response, USIS sought to introduce evidence regarding how motor carriers used the EHRs they received. Specifically, they presented evidence that motor carriers considering a potential hire will frequently call the former employers on the EHR for more information regarding the driver's work performance. The defendant claims the USIS system was designed to provide motor carriers with brief, categorical data that can be investigated if the carrier would like more information. Because trucking industry practices are so varied, they maintain this type of system was necessary to meet the needs of the industry. USIS claims this evidence of industry practice was relevant to the question of whether a willful violation occurred because it offered a rational explanation for the USIS system pertinent to the claims of willful FCRA violations.

-16-

The evidence was introduced over the plaintiffs' objection and the plaintiffs contend this constituted reversible error. They argue FCRA's accuracy requirements deal exclusively with the quality of the information in a consumer report, not how the information is used. Plaintiffs further contend the evidence could only be relevant to the causation element of the negligence claims and the district court's refusal to give a limiting instruction to that effect constituted an abuse of discretion.

Evidence is considered relevant under the federal rules if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The determination of whether the evidence is relevant is a matter within the sound discretion of the trial court, and we will not disturb that decision on appeal absent a showing of a clear abuse of discretion." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1518 (10th Cir. 1995) (quotation omitted). The admission of evidence "may constitute an abuse of discretion only if based on an erroneous conclusion of law, a clearly erroneous finding of fact or a manifest error in judgment." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998). Furthermore, the party asserting error in the admission of evidence must demonstrate that its substantial rights were affected by the wrongful admission. *Gomez*, 50 F.3d at 1518. We likewise review a district court's decision to decline to issue a limiting instruction for

abuse of discretion.  *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1441 (10th Cir. 1992).

The trial court did not err in admitting the subject evidence or in refusing to give a limiting instruction.  USIS sought to introduce the evidence to show that any ambiguity in the EHRs was not in reckless disregard of statutory duties, but a reasonable accommodation designed to meet the needs of the industry by providing them with a tool from which to conduct further investigations.  The evidence of industry practice was relevant to the question of willful noncompliance with the statute because it bears directly on the question set out as dispositive in *Cassara*, i.e., whether the trucking companies were confused about the meanings of the terms used in the EHRs.  The Rules of Evidence provide a liberal standard for relevance and this court cannot say the district court committed a clear abuse of discretion in the evidence's admission.  *See Gomez*, 50 F.3d at 1518.

## C.  Class Action Certification

The plaintiffs also claim the district court erred when it denied their motion for class certification.[12]  Fed. R. Civ. P. 23.  The district court concluded the plaintiffs' accuracy claims were not amenable to a class action.  It determined

---

[12]Because this court holds that TRFs are not consumer reports, the plaintiffs' arguments concerning class certification for their improper procurement of consumer reports claim is moot.

that the accuracy of each individual's EHR, an essential element of a § 1681e(b) claim, required a particularized inquiry. The plaintiffs contend that they were asserting systemic flaws in the EHRs, arising out of the vagueness of the work record descriptors. These systemic problems with accuracy, the plaintiffs maintain, make this issue appropriate for class certification.

When a district court has applied the correct legal standard in its decision to deny class action status, this court will reverse that decision only for abuse of discretion. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006). The procedural history of this case demonstrates that the district court did not abuse its discretion. To prevail in a § 1681e(b) suit, the plaintiff must show "(1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the plaintiff suffered an injury; and (4) the consumer reporting agency's failure caused the plaintiff's injury." *Cassara*, 276 F.3d at 1217. As the district court noted, whether a report is accurate may involve an individualized inquiry. For example, plaintiff Stewart testified that his EHR report is accurate. The district court also explained that factual disputes regarding whether an individual EHR was accurate existed for other plaintiffs. Furthermore, the jury concluded the named plaintiffs' claims were without merit. This demonstrates the necessity of an individualized inquiry into each claim. As a result, denial of class certification was not an abuse of discretion.

## III.  Conclusion

For the foregoing reasons, this court **AFFIRMS** the judgment of the district court.

No.0-1430, <u>Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.</u>

**EBEL**, Circuit Judge, concurring.

I am pleased to concur in the majority's opinion.  I write separately only to emphasize that the FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" contained in the published consumer report.  15 U.S.C. § 1681e(b)[1]; <u>cf.</u> <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1334 (9th Cir. 1995) ("An inquiry into the reasonableness of the procedures utilized by the agency in acquiring information belies a claim that liability under § 1681e(b) must be predicated on the effect of that information once disseminated.").  Accordingly, in other circumstances, a consumer reporting agency could be held liable under the FCRA even if recipients of the consumer report commonly follow up on information in that report to clarify or supplement that information.

Here, however, this nuance arises as an evidentiary matter.  The industry practice evidence at issue was arguably relevant when the plaintiffs' negligence claims, <u>see</u> 15 U.S.C. § 1681o, were extant.  But even after the trial court

---

[1]In pertinent part, this section provides:
(b) Accuracy of report
Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.
15 U.S.C. § 1681e(b).

dismissed the negligence claims, one could reasonably argue that the evidence was relevant to plaintiffs' claims that USIS wilfully violated the FCRA. See id. § 1681n. And the jury instructions adequately explained that the jury was to focus on the accuracy of the published EHRs. Therefore, I am satisfied that the trial court did not abuse its discretion and there was no prejudicial error.