PUBLISH

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**    **July 18, 2012**

**TENTH CIRCUIT**    **Elisabeth A. Shumaker**
**Clerk of Court**

---

STEPHEN J. ABRAHAM; MICHAEL C.
ABRAHAM, Individually and as Trustee
of the Mike C. Abraham Trust; D.A.
ABRAHAM, LLC; ELIZABETH
WITTEN; CHRISTINE MASON, as
Co-Trustee for the Andrew Witten Trust,
Elizabeth Witten Trust and Judith Witten
Trust, on behalf of themselves and others
similarly situated,

       Plaintiffs - Appellees/Cross-
       Appellants,

v.

BP AMERICA PRODUCTION
COMPANY,

       Defendant - Appellant/Cross-
       Appellee.

Nos. 11-2113 & 11-2126

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 6:09-CV-00961-WDS-RLP)**

---

J.E. Gallegos and Michael Condon, Gallegos Law Firm, P.C., Santa Fe, New Mexico
(Thomas A. Graves, McKool Smith, P.C., Dallas, Texas, with them on the briefs), for
Plaintiffs - Appellees/Cross-Appellants.

Scott S. Barker, Wheeler, Trigg, O'Donnell, LLP, Denver, Colorado (Marcy G. Glenn
and Christopher A. Chrisman, Holland & Hart LLP, Denver, Colorado, and Michael H.

Feldewert, Kristina E. Martinez, and Adam G. Rankin, Holland & Hart LLP, Santa Fe, New Mexico, with him on the briefs), for Defendants - Appellants/Cross-Appellees.

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

**KELLY**, Circuit Judge.

In this underpayment of royalty case, Defendant-Appellant and Cross-Appellee, BP America Production Company ("BP"), appeals from a judgment based upon a jury verdict in favor of Plaintiffs-Appellees and Cross-Appellants, a certified class of royalty and overriding royalty owners ("the class"). The judgment includes $9,740,973 in damages for failure to pay royalties consistent with the underlying leases and $3,443,372.40 in prejudgment interest (calculated at 15%). 3 R. 800.[1] The district court granted summary judgment in favor of BP on the class's punitive damages claim, 2 R. 494-95, and refused to instruct on an alleged breach of the implied covenant of good faith and fair dealing, 9 R. 1333-35, which is part of the class's cross-appeal. The district court had jurisdiction to hear the case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). We have jurisdiction under 28 U.S.C. § 1291 and we reverse and remand for a new trial.

---

[1] Record citations are to Defendant-Appellant's Appendix, unless otherwise noted. Citations to the Ninth Volume of the record are to the trial transcript, and are paginated independently from the rest of the record.

Background

This appeal is part of the most recent action in an ongoing conflict in New Mexico's San Juan Basin. The class alleged that BP breached two types of royalty contracts, one a "market-value" lease and the other a "same-as-fed" lease. "Market-value" leases are contracts under which royalty owners are entitled to be paid based on the market value of unprocessed gas as it emerges from the ground ("at the well"). "Same-as-fed" leases are contracts under which royalty owners are entitled to be paid on the same basis as the federal government, which means that royalty payments must be calculated using a comprehensive scheme of federal regulations.

As we noted in Elliott Industries L.P. v. BP America Production Co., 407 F.3d 1091 (10th Cir. 2005), gas produced from the San Juan Basin contains methane (natural gas) and entrained natural gas liquids (NGLs). In order to market the gas into the interstate pipeline, the NGLs must be removed from the gas stream; producers transport unprocessed gas from the wellhead to a processing facility, where the gas is processed into component parts. In order to determine the market value of the unprocessed gas at the well, producers sell refined natural gas and NGLs at the tailgate of the processing plant (i.e., after processing) to establish a base sales amount, and deduct from that amount costs for transportation, processing, etc. This is called a "netback" or "workback" method, and it is widely accepted as the best means for estimating the market value of gas at the well where no such market exists. If a market exists, however—if entities buy and sell unrefined gas at the wells—evidence of comparable wellhead sales is the best

possible evidence for analyzing market value at the well.

In the present case, the class takes issue with two aspects of BP's netback method for market-value-at-the-well contracts: its sales price for NGLs at the tailgate and its processing cost. Specifically, the class complains that BP sells refined NGLs at the tailgate of the processing plant to an affiliate company at a discount (called an "affiliate transfer price"), and that BP, as co-owner of the plant, deducts an inflated processing fee. BP's theory of the case is that there is a market for gas at the well in the San Juan Basin, and that its netback method resulted in royalty payments in line with market values.

Both parties moved for summary judgment. BP argued that, because it could demonstrate that a market existed for gas at the well and because its royalty payments fell within a range of market values, it satisfied its contractual obligations as a matter of law. 1 R. 95-131. The class, meanwhile, argued that, because BP used a netback method to calculate royalty payments and because that netback method was flawed, BP had breached its contractual obligation as a matter of law. 1 R. 167-83. Neither party succeeded, and the breach of contract matter was tried to a jury. As noted, the class also claimed breach of an implied covenant of good faith and fair dealing and sought punitive damages, but the district court rejected both claims. 2 R. 494-95, 9 R. 1333-35. BP also unsuccessfully moved *in limine* to prohibit the class from introducing evidence regarding the royalty practices of ConocoPhillips ("COP"), a major producer in the San Juan Basin and co-owner of the processing plant with BP. 2 R. 497-506, 3 R. 623-24.

In cross-appeals, both BP and the class argue that they were entitled to judgment

as a matter of law. BP also appeals the district court's admission of COP's royalty practices ("the COP evidence") and the district court's award of prejudgment interest, and the class cross-appeals the district court's rejection of its claims relating to the implied covenant of good faith and fair dealing and punitive damages.

## Discussion

We develop additional facts as needed to address each issue decided on appeal.

A.      Judgment as a Matter of Law for Market-Value Leases

Judgment as a matter of law is warranted only where the evidence points but one way and is not susceptible to reasonable inferences in favor of the opposing party. Jones v. United Parcel Serv., Inc., 674 F.3d 1187, 1195 (10th Cir. 2012); Fed. R. Civ. P. 50(a)(1). Neither party is entitled to judgment as a matter of law based on the evidence in this record. BP presented evidence that there was a market value for unprocessed gas at the well in the San Juan Basin, 9 R. 1093 (BP's expert testified that "there is a market for purchase and sale of unprocessed gas at the well . . . in the San Juan Basin"), but the class presented evidence that no such market exists, id. at 365-68 (class's expert testified that she was not aware of any sales of unprocessed gas in the San Juan Basin), 392-94 (same expert reiterated that "sales" identified by BP's expert were not sales "at the well," but rather were title transfers with corresponding payments calculated using a netback method, and that BP's methodology for demonstrating a market at the well was flawed).

Similarly, the class presented evidence that BP's netback method included an unreasonable processing cost, id. at 568-70 (class's expert testified that BP incurred a cost

of roughly 2.7 cents/gallon to process gas between January 2007 and January 2010 but deducted roughly 22.9 cents/gallon as a processing cost during that same period), 654 (same expert explained that BP continued to charge a 25% NGLs processing fee after at least one other plant switched to a 14% NGLs processing fee), but BP presented evidence that its processing fee was established based on market norms, id. at 982-85 (BP employee explained that she conducted a market analysis before suggesting that BP charge a 25% NGLs processing fee starting January 1, 2007).  The class also presented evidence that BP inappropriately sold NGLs at a discounted price to a BP affiliate company, id. at 397-98 (class's expert testified that BP should be using non-affiliate sales prices, rather than affiliate transfer prices, and shorted the class by the difference between the affiliate transfer price and a non-affiliate sales price), 561 (second expert testified that a third-party, arm's-length sale price for NGLs would be "quite a bit higher than" BP's affiliate transfer price), 565 (second expert testified that the average difference between a third-party sale price and BP's affiliate transfer price was 3.9 cents/gallon over a 48-month period), but BP challenged that testimony on cross-examination, id. at 604 (class's expert admitted that he had not factored in a transportation cost between the San Juan Basin, where BP sold NGLs at an affiliate transfer price, and a location near the southeast corner of New Mexico, where the expert analyzed third-party sales prices).  Disputed issues of material fact on both issues preclude judgment as a matter of law in favor of either party.  Jones, 674 F.3d at 1195.

B.     Judgment as a Matter of Law for Same-as-Fed Leases

BP moved for judgment as a matter of law at the close of the class's evidence on its same-as-fed breach of contract claim. 9 R. 965-68. Specifically, BP argued that the class had not presented any evidence that BP paid the class any differently than it paid the federal government, or that BP paid the federal government incorrectly. Id. The district court denied the motion, finding BP's use of affiliate transfer prices in paying the federal government might give rise to a valid claim for same-as-fed leases. Id. at 968-69.

The class did not offer any evidence to support its same-as-fed claim. Based on the evidence presented at trial, there was no way for a jury to determine that BP underpaid its same-as-fed royalty holders, and the issue never should have gone to the jury. BP is entitled to judgment as a matter of law on the class's same-as-fed breach of contract claims. Henry v. Storey, 658 F.3d 1235, 1237-38 (10th Cir. 2011) (judgment as a matter of law is appropriate if, after a party has presented its evidence, a reasonable jury would not have a legally sufficient evidentiary basis to find in favor of that party).

C.     Admission of the COP Evidence was Reversible Error

We review evidentiary rulings for an abuse of discretion, and pay deference to the trial court's familiarity with the case and experience in evidentiary matters. Frederick v. Swift Transp. Co., 616 F.3d 1074, 1083 (10th Cir. 2010) (citing Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)). The abuse of discretion standard governs the initial Rule 401 relevance determination. Tanberg v. Sholtis, 401 F.3d 1151, 1162 (10th Cir. 2005). If we find that the district court abused its discretion by admitting evidence,

we must also determine whether that admission affected a party's substantial rights. Fed. R. Evid. 103(a); Fed. R. Civ. P. 61; Tanberg, 401 F.3d at 1162. We will reverse a jury's verdict based on an evidentiary error if the error "had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1212 (10th Cir. 2011). Framed differently, "[w]e must reverse unless we find that this jury's verdict more probably than not was unaffected by the error." Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 886 (10th Cir. 2006).

Beginning in 2007, COP decided to pay all of its leases, including market-value leases, the same way it pays the federal government. 9 R. 297-98. In complying with federal regulations, COP paid royalty on 100% of the volume of production, used an actual sales price (as opposed to an affiliate transfer price), and did not deduct a marketing fee. Id. at 298. COP had done this for federal royalty calculations well before 2007; the change was deciding to pay market-value leases on a same-as-fed basis. Id. at 299. COP decided to pay royalty in this way because the majority of the land on which COP produced natural gas was federal land, such that the majority of royalty payments COP made required federal calculations. Id. at 300-01. COP made the decision, at least in part, for administrative convenience, id. at 322, and COP made no effort to estimate or determine market value at the well following the decision, id. at 322-23.

BP filed a motion *in limine* asking the district court to exclude evidence regarding COP's decision to pay all leases on a same-as-fed basis. 2 R. 497-506. In that motion,

BP explained that COP decided to pay all royalty on a same-as-fed basis, beginning in 2007, to maximize convenience and minimize litigation risk. Id. at 501. BP argued that federal or same-as-fed royalty calculations were irrelevant to determining the market value of gas at the well, id. at 499-500, that COP's use of such a methodology for its market-value leases had no bearing on BP's obligation under the same types of leases, id. at 501-02, and that evidence of COP's use of federal calculations for market-value leases therefore should be excluded, id. BP also cited a previous opinion from this court, involving substantially the same parties, suggesting that federal or same-as-fed royalty calculations are "not relevant" to market-value royalty obligations. Id. at 501 (quoting Elliott, 407 F.3d at 1100 n.1). The class opposed that motion, arguing that BP made comparative netback calculations an issue in the case and that COP was the only truly comparable producer-processor in the Basin. 3 R. 529-30, 535.

Elliott involved substantially the same market-value and same-as-fed leases at issue here. The parties agreed in Elliott, as they agree here, that the market-value leases required that the plaintiffs "be paid based on 'the market value of the gas at the well as produced . . . .'" 407 F.3d at 1109. We stated that same-as-fed royalty calculations were "not relevant" to the calculation of market-value royalties. Id. at 1100 n.1.

The legal distinction between market-value leases and federal or same-as-fed leases is clear. A same-as-fed royalty owner is entitled to be paid in the same manner as the federal government is paid: following specific and comprehensive federal regulations to arrive at a royalty amount. A market-value royalty owner, by contrast, is entitled to be

paid based on: (1) the market value of unprocessed gas at the well, or (2) an acceptable estimation of what the market value of unprocessed gas at the well would be, via netback calculation. Where the goal for a market-value lease is to determine or estimate what market value is or would be, the goal for a same-as-fed lease is to correctly apply federal regulations using accurate numbers. While both royalty calculations may require a netback calculation, the nature and goals of same-as-fed royalty calculations versus market-value royalty calculations are different.

The district court abused its discretion by admitting the COP evidence. Beginning in 2007, COP made no effort to estimate market value in paying royalty on its market-value leases. Thus, COP's practice of strictly complying with federal royalty calculation requirements, whether or not such was required, was irrelevant to BP's obligations under market-value royalty agreements in the present case. Further, the COP evidence could not inform the jury what a buyer would pay for unprocessed gas at the well, and did not bear sufficient relation to market value as a general matter, and therefore should have been excluded as irrelevant under Rule 401. BP, alleging the error, bears the burden of showing that the error affected its substantial rights. Owner-Operator Indep. Drivers Ass'n v. USIS Commercial Servs., Inc., 537 F.3d 1184, 1193 (10th Cir. 2008). BP argues that the class repeatedly relied on the COP evidence throughout the trial and emphasized the COP evidence in closing argument. Aplt. Br. 47. We have held that "considerable use of [inadmissible] evidence . . . during the taking of evidence and during argument" may be sufficient to demonstrate substantial prejudice, Sanjuan v. IBP, Inc., 160 F.3d

-10-

1291, 1297 (10th Cir. 1998), and that strong emphasis placed on irrelevant evidence may be sufficient to allow us to infer that a jury likely premised its verdict on such evidence, Motive Parts Warehouse v. Facet Enters., 774 F.2d 380, 397-98 (10th Cir. 1985).

Here, the class took evidence from COP's representative at length, see 9 R. 262-82, 292-306, and referenced COP and its royalty practices repeatedly in opening and closing statements, see id. at 114-15 (class counsel stated that BP and COP both calculate federal royalty, but only COP applies it to market-value leases while BP unfairly deducts 25% NGLs), 123-24 (class counsel stated that COP, the largest company in the San Juan Basin, decided that the right way to pay market-value leases was to achieve maximum mutual benefit with royalty owners by paying on a same-as-fed basis), 125 (class counsel stated that the class is entitled to $9.7 million based on BP's failure to pay royalties the way COP pays royalties), 1254-55 (class counsel argued that COP's representative "chose the right path" by paying market-value royalty owners on a same-as-fed basis), 1255-57 (class counsel argued that COP, the only entity in the San Juan Basin comparable to BP, concluded that paying market-value leases on a same-as-fed basis was the most reasonable approach), 1322 (class counsel argued that COP's approach is "right" and "fair"), 1323 (class counsel argued that the class's damages calculation was based on "the way [COP] did it"), 1325 (class counsel argued that damages totaled $9.74 million).

The district court gave a limiting instruction on the use of the COP evidence, but we are in grave doubt about the effect of such an instruction; the evidence was irrelevant and assumed an importance at trial that we cannot overlook. BP was forced to refute the

-11-

evidence and could not stop the class from referencing it repeatedly. BP's substantial rights were affected, particularly as the class stressed that what COP did was "right" and "fair." We cannot say that the jury's verdict "more probably than not was unaffected by" the district court's erroneous admission of the COP evidence. Sims, 469 F.3d at 886.

The class's procedural and substantive attacks on BP's appellate argument are unavailing. First, the class argues that BP has waived this issue by failing to object to the COP evidence at trial. Aplee. Br. 48-49. We disagree: given the definitive ruling on the COP evidence before trial, BP was not required to renew its objection. Fed. R. Evid. 103(b); Nat'l Envtl. Serv. Co. v. Ronan Eng'g Co., 256 F.3d 995, 1001-02 (10th Cir. 2001). Second, the class argues that BP opened the door to the COP evidence by introducing evidence of other entities' netback practices in the San Juan Basin. Aplee. Br. 49. But the COP evidence had nothing to do with a netback calculation *for market-value purposes*; COP abandoned any effort to estimate or determine market value for gas at the well beginning in 2007, and COP's approach therefore was irrelevant to BP's obligations. Finally, the class argues that the COP evidence was relevant to its implied covenant and punitive damages claims. Aplee. Br. 31, 50. Again, COP's royalty practices had no bearing on BP's market-value royalty obligations, and therefore were irrelevant to whether BP calculated royalty payments for market-value leases in bad faith, as well. Admission of the COP evidence was reversible error, and we reverse for a new trial on that ground.

D.     The District Court Must Explain Any Decision on the Implied Duty of Good Faith and Fair Dealing Claim

The class argues that the district court erred by refusing to give an instruction relating to the class's claim for breach of the implied duty of good faith and fair dealing, Aplee. Br. 57-61, and that a breach of that duty would support its claim for punitive damages, id. at 57; Aplee. Reply Br. 26.  Specifically, the class argues that after BP settled similar underpayment of royalty claims through December 2006, it failed to reconsider, let alone adequately disclose, the components of its netback method, thereby depriving the royalty owners of the benefits of the contract.  Aplee Br. 60-61, 64-65; Aplee. Reply Br. 18.  Because the class challenges the district court's refusal to give a specific instruction, we review the district court's refusal for an abuse of discretion, Zokari v. Gates, 561 F.3d 1076, 1090 (10th Cir. 2009), recognizing that the class is entitled to an instruction on a legally viable theory if there is appropriate evidence to support it, Woolard v. JLG Industries, Inc., 210 F.3d 1158, 1177 (10th Cir. 2000).

The class specifically objected to the district court's refusal to instruct the jury on the implied duty of good faith and fair dealing.  9 R. 1334.  The district court refused to give that instruction, apparently based on its belief that it had addressed this claim earlier in the proceedings.  Id. at 1333-35 (referencing the court's Memorandum Opinion and Order at 2 R. 482-96).  It had not; the order referenced by the court discussed the class's implied duty to market and punitive damages claims, but did not address the class's implied duty of good faith and fair dealing claim.  2 R. 482-96.

We are not well-equipped to review the district court's ruling on the class's proposed instruction without knowing why the district court acted as it did. We simply do not know whether the instruction was rejected because the district court concluded that the duty of good faith and fair dealing did not apply to the royalty agreements as a matter of law, whether it determined that there was an insufficient factual basis (a factual basis that may be different on remand given our decision on the relevance of the COP evidence to the contract claim), or for some other reason. Although BP argues that the claim is foreclosed by Elliott, 407 F.3d at 1115, the plaintiff in that case did not articulate the necessity of such a duty to effectuate the express provision. Additionally, subsequent pronouncements by the New Mexico courts may influence the analysis. See Davis v. Devon Energy Corp., 218 P.3d 75 (N.M. 2009); Sanders v. FedEx Ground Package Sys., Inc., 188 P.3d 1200 (N.M. 2008). On remand, the district court should provide an explanation of any necessary ruling on this issue. A discussion of punitive damages, without knowing whether the class will be able to prove its breach of implied duty claim, is premature.

On remand, the district court should vacate the judgment entered on the jury's verdict and the prejudgment interest award (which we do not consider in light of our disposition). It should enter partial judgment in favor of BP on the class's same-as-fed breach of contract claim. Finally, it should provide an explanation of any ruling on the breach of the implied covenant of good faith and fair dealing, as needed.

REVERSED and REMANDED for a new trial.