FILED
United States Court of Appeals
Tenth Circuit

December 11, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NICHOLAS BROOKS RACE,

    Defendant - Appellant.

No. 12-1067
(D.C. No. 1:11-CR-00130-WYD-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **HOLMES** and **MATHESON**, Circuit Judges.

---

Nicholas Race was indicted for (1) possession with intent to distribute a controlled substance (methamphetamine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).  He pled guilty to Count Three and was convicted by a jury on Counts One and Two.

Mr. Race argues on appeal that the district court committed two reversible errors

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in 1) not granting a mistrial after a government witness effectively revealed that he had a previous conviction and 2) admitting into evidence his statement that he sold drugs. He also argues that the cumulative effect of these errors violated his due process rights. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.      BACKGROUND

### A. *Factual Background*

On March 16, 2011, a team of parole officers from the Colorado Department of Corrections made an unannounced visit to the apartment of parolee Michael Smith to verify that he was complying with his parole conditions. Mr. Smith's mother answered the door and let the parole officers into the apartment. When Mr. Smith came out of his bedroom, they ordered him to sit on a living room couch.

One of the officers, Miguel Morris, testified at trial that he had never seen anyone other than Mr. Smith and his mother at the home and was alarmed to see three unknown persons, two women and a man, in Mr. Smith's bedroom. Officer Morris drew his gun when he recognized the man as Mr. Race.

Out of the presence of the jury, Officer Morris testified that he recognized Mr. Race as someone "wanted on an escape status out of the parole gang unit." ROA, Vol. 2 at 326. He had seen Mr. Race's name and photo on a list of offenders "who had absconded from their parole supervision from the gang unit." *Id.* at 335.

Melissa Lawrence, who led the parole team that day, testified that they asked Mr. Race to identify himself. When he identified himself as "Nick Race," she placed him in

handcuffs and took him to the kitchen/dining room area for a pat search. She testified that she discovered four baggies containing what she suspected to be methamphetamine. Mr. Race also told her that he had a handgun in his waistband, which she removed and gave to Officer Morris to be unloaded. Officer Lawrence also testified that she found a digital scale, which she stated in her experience is often used to weigh narcotics. She further found over $600 in cash and numerous small, one-inch-by-one-inch plastic bags. From the backpack Mr. Race was wearing, they recovered two loaded gun magazines, "a glass bong type pipe," and a cell phone. *Id*. at 156-57.

On March 17, 2011, after he was arrested, Mr. Race was interviewed by Investigator Richard Sheets of the Arapahoe County Sheriff's Department. A clip of that interview, in which Mr. Race stated, "I meet 'em afterwards sometimes and sell 'em dope," was played for the jury at trial. Suppl. ROA, Vol. 2 at 42.

The Government also obtained recordings of several of Mr. Race's phone calls while in jail. In a clip from March 18, 2011, Mr. Race spoke with an unidentified woman:

> Mr. Race: What don't you understand? I told you what I was doing.
> Female: I didn't—I wasn't catchin' what you were doing, apparently. I thought you were just getting high.
> Mr. Race: Well, how do you get high? It ain't free.

Aplee. Br. Attachment 4.

B. *Procedural Background*

On April 6, 2011, Mr. Race was indicted. On September 12, 2011, Mr. Race

-3-

changed his plea to guilty on Count Three, possession of a firearm by a previously convicted felon. On September 15, 2011, the jury found Mr. Race guilty of Counts One and Two, possession with intent to distribute methamphetamine and possession of a firearm in furtherance of drug trafficking. On February 2, 2012, the district court sentenced him to 84 months on Counts One and Three, to be served concurrently, and to 60 months on Count Two, to be served consecutively. The court entered judgment on February 13, 2012, and Mr. Race filed a notice of appeal on February 24, 2012.

## II.    DISCUSSION

Mr. Race appeals two of the district court's rulings. First, he argues that the district court erred in not granting a mistrial after a government witness effectively revealed that he had a previous conviction. Second, he argues that the district court erred when it failed to consider his statement that he sold drugs as character propensity evidence subject to the limitations of Rule 404(b) of the Federal Rules of Evidence. Finally, he argues that the cumulative effect of these errors violated his right to a fair trial.

### A. *Witness Statement*

At trial, the Government asked Officer Morris why he had drawn his gun on the night Mr. Race was arrested. He responded that he recognized Mr. Race. Mr. Race argues that the district court abused its discretion in instructing the jury to disregard the question and statement rather than declaring a mistrial. The district court, according to Mr. Race, made a mistake of law because it believed it could grant a mistrial only if there

-4-

had been prosecutorial misconduct, and not for a prejudicial statement by a government witness.

### 1. *Additional Background*

On August 31, 2011, Mr. Race filed a notice of intent to plead guilty to Count Three. The Government's evidence to prove Count Three would have revealed that he was a convicted felon and a parolee. Mr. Race feared this evidence would influence the jury to convict him of Counts One and Two. He also filed an objection to the Government's introduction of evidence of his status as a felon. On September 12, 2011, the first day of trial, he changed his plea on Count Three to guilty. He also chose not to testify so that his prior offenses could not be used to impeach him.

At trial, the Government asked Officer Morris why he had his firearm drawn. He responded, "Because I recognized Mr. Race." ROA, Vol. 2 at 323. Mr. Race objected and requested a mistrial. At a meeting between counsel and the court, Mr. Race's counsel argued that Mr. Race's status as a felon and parolee was inadmissible and that Officer Morris's testimony "suggested to the jury that Mr. Race is a known bad guy who is on his list of bad guys in the Department of Corrections." *Id*. at 323-24. Mr. Race's counsel also stated that she was "very concerned . . . [n]ot only because of the answer, but because of the question. The question itself really was inviting . . . an answer which is inflammatory." *Id*. at 325.

During a recess, the court reviewed "the law applicable to mistrials." *Id*. at 336. After the recess, the judge told the parties that "prosecutorial misconduct may so infect

the trial with unfairness as to make the resulting conviction a denial of due process." *Id*.; *see Greer v. Miller*, 483 U.S. 756, 765 (1987). "[W]hether to grant a mistrial . . . turns on . . . whether the defendant's right to a fair and impartial trial was impaired." ROA, Vol. 2 at 336 (quoting *United States v. Gabaldon*, 91 F.3d 91, 93 (10th Cir. 1996)).

In examining whether the prejudice in this case "is harmless," the court stated, "it very well may be that the Government's question . . . was improper, if the Government knew what the witness's answer would be." *Id*. at 337. The court continued, "But the real question is whether, in taking this in the full context of all the evidence in the case and based on what the jury heard, it's so prejudicial that the prosecutorial misconduct has so infected the trial with unfairness as to make the resulting convictions a denial of due process." *Id*. at 337-38. The court concluded that what happened had not reached this point because the jury did not hear why the witness recognized Mr. Race. When the jury returned, the court explained that the question and answer had been improper and instructed the jurors to disregard them.

2. *Discussion*

"We review a district court's refusal to grant a mistrial for abuse of discretion." *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004); *see also United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008). "The district court has discretion to grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired." *Meridyth*, 364 F.3d at 1183. Moreover, "'motions for mistrial . . . call for an examination of the prejudicial impact of an error or errors when viewed in the context of

-6-

an entire case.'" *Id*. (quoting *Gabaldon,* 91 F.3d at 93-94).

Mr. Race attempts to draw a distinction between prosecution questions and witness statements giving rise to motions for a mistrial. We have applied the same standards for reviewing denials of motions for a mistrial in both types of cases, including those Mr. Race has cited for support. *See, e.g., Taylor*, 514 F.3d 1092; *Meridyth*, 364 F.3d 1181. The district court did not err in referring to the cases on prosecutorial misconduct or in referring to the term in its analysis.

The district court also did not err in evaluating whether the witness's statement was prompted by an improper question by counsel. *See Meridyth*, 364 F.3d at 1183 ("where the prosecutor asked a question her witness answered in a potentially improper way, a similar analysis" to that for prosecutorial misconduct "is appropriate," including consideration of "whether the prosecutor acted in bad faith."). Indeed, although he now objects to the district court's consideration of the prosecutor's question, Mr. Race expressed concern about the question at the time of his objection at trial, stating that the question had invited an inflammatory answer.

The district court analyzed both the prosecutor's question and the witness's response. The court stated that "it very well may be that the Government's question . . . was improper," but then moved on to what it considered to be the core question of the mistrial analysis: "[I]n taking [the question and invited response] in the full context of all the evidence in the case and based on what the jury heard, it's so prejudicial that the prosecutorial misconduct has so infected the trial with unfairness as to make the resulting

convictions a denial of due process." ROA, Vol. 2 at 337-38. The court correctly cited precedent governing mistrial and then examined whether Mr. Morris's testimony had so infected the trial as to make it unfair. It concluded that "on the totality of the record before [it] . . . this one answer do[es] not make this an unfair trial." *Id*. at 339; *see Meridyth*, 364 F.3d at 1183 (courts should examine prejudicial impact of an error in the context of the entire case to see if the defendant's right to a fair trial was impaired).

Finally, in deciding whether to grant a motion for a mistrial, "[t]he general rule is that the effect of improper evidence may be remedied by admonishing the jury to disregard and by withdrawing the evidence." *United States v. Laymon*, 621 F.2d 1051, 1053 (10th Cir. 1980); *see also United States v. Oles*, 994 F.2d 1519, 1524 (10th Cir. 1993). "Absent evidence to the contrary, it is presumed that juries follow the trial court's instructions." *United States v. Santiago*, 977 F.2d 517, 520 (10th Cir. 1992). The court instructed the jury to ignore both the question and the statement. No evidence has been presented that the jury was unable to follow this instruction.

Based on our review of the entire record, we conclude that the court did not abuse its discretion in denying the motion for a mistrial.

B. *Mr. Race's Admission to Selling Drugs*

Mr. Race argues that the district court improperly admitted the statement, "I meet 'em afterwards sometimes and sell 'em dope," without any consideration of Rule 404(b). The court held the statement was admissible as a party admission under Fed. R. Evid. 801(d)(2)(A), that Fed. R. Evid. 404(b) was inapplicable, and that the evidence was

properly admitted under Fed. R. Evid. 403 because the probative value of the statement outweighed any prejudice.

### 1. *Additional Background*

Before trial, the Government indicated that it intended to introduce the "I sometimes sell 'em dope" statement as evidence that Mr. Race possessed the narcotics with the intent to distribute them. Mr. Race objected because the statement did not refer to selling drugs on the day he was arrested, but instead referred to earlier activities. As such, the evidence would improperly suggest that Mr. Race was acting in conformity with past conduct. The court declined to rule in advance on this issue.

Mr. Race renewed his objection at trial. He argued that it was not clear from the conversation when the events referred to in the statement occurred, and that the statement could refer to events that occurred long before the day Mr. Race was arrested. The testimony would therefore "invite the jury to conclude . . . that Mr. Race was simply acting in conformity with past conduct," in violation of Rule 404(b). ROA, Vol. 2 at 510-11.

The court stated, "I'm not so sure it's a 404(b) issue. What we're really talking about is a direct statement made by Race. . . . And the real question is whether or not the prejudicial effect outweighs the probative value because these are the actual words of the defendant." *Id*. at 511. The court subsequently ruled, "I'm going to let it in. I find under 403 that the probative value of the words . . . outweighs any prejudicial effect or confusion of the issue. So under 403 I'll let that come in over objection." *Id*. at 513.

2. *Discussion*

"We review evidentiary rulings for an abuse of discretion, and pay deference to the trial court's familiarity with the case and experience in evidentiary matters." *Abraham v. BP Am. Prod. Co.*, 685 F.3d 1196, 1202 (10th Cir. 2012). "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005) (quotations omitted).

If we find that there has been an abuse of discretion, we must determine whether the error was harmless. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1212 (10th Cir. 2011). "An erroneous admission of evidence is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Id.* (quotations omitted). We have also stated that "error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error." *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993); *see also Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1327 (10th Cir. 1998).

The district court erred in concluding that, because the statement came from Mr. Race, Rule 404(b) was not applicable.[1] We have held that "[a]lthough . . . statements are

---

[1] Rule 404(b) states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b).

-10-

party admissions under Rule 801(d) and thus not hearsay, they must nevertheless also be analyzed for admissibility under Rule 404(b) [when] they reveal or suggest prior criminal conduct." *United States v. Oberle*, 136 F.3d 1414, 1418 (10th Cir. 1998). Although Mr. Race's statement may have referred to criminal conduct on the day he was arrested, it more strongly suggests prior criminal conduct. The district court should therefore have analyzed the statement's admissibility under Rule 404(b).

Mr. Race, however, fails to demonstrate that the error was harmful in light of the substantial evidence against him. When he was arrested, baggies containing 3.592 grams of methamphetamine, additional baggies, a loaded handgun, two loaded magazines, over $600 in cash, and a small digital scale were taken from him. In addition, when speaking by phone with an unidentified woman while in prison, she told him that she had "thought [he was] just getting high." Aplee. Br. Attachment 4. He responded, "Well, how do you get high? It ain't free." *Id.* In another call with an unidentified woman, he spoke about "hook[ing]" others up and "g[etting] 'em all high." *Id.* Finally, in a recorded interview with an investigator while in prison, he stated, "You saw how much money and dope I got caught with." *Id.*, Attachment 2. Given this evidence of guilt, we are not convinced that the error in the admission of Mr. Race's statement "had a substantial influence on the outcome," and we are not left "in grave doubt as to whether [the error] had such effect." *James River*, 658 F.3d at 1212 (quotations omitted).

Although the district court erred in failing to apply Rule 404(b) to the admissibility of Mr. Race's statement, the error was harmless.

-11-

C. *Cumulative Effect*

Mr. Race argues that the cumulative effect of the two alleged errors violated due process because it rendered his trial unfair. "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Schuler*, 458 F.3d 1148, 1156 (10th Cir. 2006). We have found only one instance of harmless error in the district court's opinion. *See United States v. Barrett*, 496 F.3d 1079, 1121 (10th Cir. 2007) (noting that cumulative error analysis requires at least two errors). Accordingly, "there is no basis for a cumulative error determination." *United States v. McKneely*, 69 F.3d 1067, 1080 (10th Cir. 1995).

## III.   **CONCLUSION**

For the reasons stated above, we affirm.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

-12-