**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BARBARA DAHLBERG, individually
and as personal representative of decedent
Ronald Dahlberg,

      Plaintiff - Appellant,

v.

MCT TRANSPORTATION, LLC;
DANIEL J. O'BRIEN,

      Defendants - Appellees.

No. 13-2119
(D.C. No. 1:11-CV-00203-RHS-LFG)
(D.N.M.)

---

**ORDER AND JUDGMENT***

---

Before **HARTZ**, **EBEL**, and **PHILLIPS**, Circuit Judges.

---

    Barbara Dahlberg sued the driver of a tractor-trailer and his employer after an automobile accident on Interstate 25 resulted in injuries to her and in the death of her husband, Ronald Dahlberg. She lost on all claims—either by way of pretrial dismissal or jury verdict. Ms. Dahlberg now challenges the district court's dismissal of her claims against the driver's employer for negligent training and supervision, as well as the jury's finding that the driver was not negligent. The dispositive issue on appeal is whether the jury's no-negligence verdict stands as to the driver despite various evidentiary challenges.

---

    * This order and judgment is not binding precedent except under the doctrines of law of the case, claim preclusion, and issue preclusion. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Because we conclude that it does, Ms. Dahlberg's challenge to the dismissal of her direct-negligence claims necessarily fails as well. There is no practical likelihood that the jury would have found the driver's employer liable for negligent training or supervision when it found no negligence on the part of the driver himself.

## BACKGROUND

Ronald Dahlberg was driving south on Interstate 25 near Las Vegas, New Mexico, one windy day in February 2008. He drove a pickup truck with a large travel-trailer hitched to the back. His wife, Barbara, sat in the passenger seat. At the time, Daniel O'Brien was also southbound on the same stretch of highway, driving a tractor-trailer rig for his employer, MCT Transportation. O'Brien was driving in the right lane of travel.

Mr. Dahlberg attempted to pass O'Brien. At some point during the pass, however, he lost control of his truck. The key dispute at trial was what caused this loss of control. According to Ms. Dahlberg, her husband was forced to veer to the left when O'Brien encroached into their lane, which caused their trailer to sway out of control. For his part, O'Brien testified that he did not encroach into the Dahlbergs' lane but actually moved onto the shoulder to give them more room. He said he noticed a lot of movement in the Dahlbergs' truck and travel-trailer as they passed him. Defendants suggested that it was the wind that caused this movement and ultimately caused the Dahlbergs' travel-trailer to yaw and overturn once it moved beyond O'Brien's rig. The wind that day was blowing from the west, meaning that O'Brien's rig would have blocked the Dahlbergs from the wind during the pass.

Aside from this dispute about the cause of the accident, all accounts of the ensuing crash were generally the same. Because of the dramatic tipping of the Dahlbergs' trailer onto its left side, the Dahlbergs' truck swung into the right lane, in front of the tractor-trailer. The tractor-trailer collided with the Dahlbergs. The Dahlbergs' truck then rolled before coming to a standstill to the west of the highway. Both Dahlbergs suffered injuries, although Mr. Dahlberg's were far more severe. He died less than a week after the accident.

Ms. Dahlberg (individually and as personal representative of her late husband) filed negligence claims against O'Brien and MCT. Early on, Defendants filed a motion under Federal Rule of Civil Procedure 11 and 12(b)(6) to dismiss various paragraphs of the complaint—including those alleging that MCT had negligently trained and supervised O'Brien. The district court[1] granted the motion, effectively dismissing the negligent-training and negligent-supervision claims.

Only the negligence claim against O'Brien went to trial. To establish O'Brien's negligence, Ms. Dahlberg had to prove at least one of the following: (1) that O'Brien encroached on the Dahlbergs' lane; (2) that O'Brien drove his tractor-trailer too fast in the windy conditions; (3) that O'Brien failed to exercise ordinary care at all times to prevent an accident; or (4) that O'Brien failed to maintain proper control so as to avoid placing himself or others in danger and to prevent an accident. After a four-day trial, the

---

[1] The parties consented to proceed before a United States Magistrate Judge (referred to as the district court).

jury implicitly found that Ms. Dahlberg had not proven any of these things and rendered a verdict in O'Brien's favor.

## DISCUSSION

Ms. Dahlberg raises two overarching challenges on appeal. First, she contends that the district court wrongfully dismissed her negligent-training and negligent-supervision claims against MCT. Second, she contends that the district court abused its discretion with a number of evidentiary rulings, thereby entitling her to a new trial on her negligence claim against O'Brien. We address the second of these challenges first and conclude that the alleged evidentiary errors do not entitle Ms. Dahlberg to a new trial. Because the verdict stands, Ms. Dahlberg's first challenge necessarily fails as well: As a matter of common sense, the jury's verdict in favor of O'Brien precludes any possibility that the dismissed claims against MCT could have been successful.

## 1. Evidentiary Rulings

Ms. Dahlberg raises six evidentiary challenges on appeal. She claims the district court abused its discretion by (1) prohibiting questions regarding the physical impossibility of Justin DuBois's eyewitness testimony; (2) excluding computer animations created by expert witness Kevin Johnson; (3) allowing defense counsel to repeatedly raise the issue of Mr. Dahlberg's seat belt use (or lack thereof); (4) allowing Police Officer Carl Patty to offer improper opinion testimony; (5) limiting the cross-examination of O'Brien to exclude evidence of training; and (6) excluding altogether the testimony of designated

-4-

trucking-industry expert Walter Guntharp. We address, and reject, each of these challenges in turn.

But first, our standard of review. We review evidentiary rulings like the ones here for abuse of discretion, and we "pay deference to the trial court's familiarity with the case and experience in evidentiary matters." *Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1213 (10th Cir. 2013). An abuse of discretion occurs when the district court "commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Breakthrough Mgmt. Grp. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 (10th Cir. 2010). Even if we conclude that the district court abused its discretion in admitting or excluding the evidence, we will consider the court's error harmless unless it affected a party's substantial rights. Fed. R. Evid. 103(a); Fed. R. Civ. P. 61; *Abraham v. BP Am. Prod. Co.*, 685 F.3d 1196, 1202 (10th Cir. 2012). An error affects substantial rights if it "had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Abraham*, 685 F.3d at 1202.

## 1.1  Physical Impossibility of DuBois's Testimony

Justin DuBois was the only nonparty eyewitness to the accident and the first person to respond to the scene. His testimony largely corroborated Defendants' version of events. Just before the collision, he was on Interstate 25 driving north—the opposite direction of the Dahlbergs and O'Brien. DuBois testified that he was about 300 to 400 yards away when he began to focus on the approaching trucks. He testified that the Dahlbergs and

O'Brien were in their own lanes and that O'Brien's tractor-trailer did not encroach. He further testified that as the Dahlbergs completed their pass, their trailer came into the wind and "blew over," causing the Dahlbergs' truck to rotate or swing into the right lane, in front of O'Brien. App. vol. 7, at 1422. All of this happened "pretty quickly" from DuBois's perspective because he was travelling in the opposite direction. *Id.* at 1418. He passed the scene around the time of the collision, watching the final events through his rearview mirror. According to DuBois, there was nothing O'Brien could have done to avoid the accident.

Ms. Dahlberg twice sought to discredit DuBois's testimony. First, she tried to have her expert witness, Kevin Johnson, testify that it was physically impossible (given the relative speed of DuBois and the trucks) for DuBois to have witnessed the accident as he described. Her goal was "to establish that Mr. DuBois could not have observed the vehicles for as long as he stated because, given the closing speed, he would have been past the tractor-trailer well before that time had elapsed." Appellant's Br. at 33. Defendants objected to this line of questioning, saying that there was nothing about closing speeds or the plausibility of DuBois's account in Johnson's expert report. The district court agreed and ruled that Johnson could not testify that DuBois's account was physically impossible.

We find no abuse of discretion in the district court's approach to Johnson's testimony. A party who seeks to introduce an expert's opinion into evidence must provide a written disclosure report to the other side that contains "a *complete* statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i)

(emphasis added). The rule also imposes a continuing duty to supplement the expert report with any additions or changes. *Id.* at 26(a)(2)(E), 26(e)(1). These requirements are "mandatory and self-executing." *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 59 (1st Cir. 2001). This means that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002).

Ms. Dahlberg does not argue that she properly disclosed the testimony at issue. At trial, she could not point to any physical-impossibility opinions in Johnson's report. Nor can she now. As far as we can tell, Defendants indeed lacked pretrial notice of the proposed testimony at issue. In fact, based on Johnson's deposition testimony, Defendants had reason to expect that Johnson believed DuBois's statement was "good." App. vol. 5, at 1047. Given this, paired with Ms. Dahlberg's failure to explain why her nondisclosure might be justified or harmless, we see no reason to question the district court's ruling.

Moreover, despite the court's ruling, Johnson still testified at some length about the physics of DuBois's recitation of events. Ms. Dahlberg asked Johnson how far away DuBois was when he first saw the Dahlbergs and O'Brien. Johnson testified that DuBois and the trucks had a closing speed of about 210 feet per second, that DuBois observed the trucks for 10 to 15 seconds, and that one could calculate the distance between DuBois and the oncoming trucks by multiplying the closing speed by the observation time. From these numbers, Johnson testified that for DuBois to watch the oncoming trucks for 15 seconds he would have had to begin watching at a point of more than 3000 feet away. But

Johnson then pointed out that DuBois said he saw the trucks at 300 to 400 yards, or just 900 to 1200 feet—less than half the distance calculated. In light of all this, we think Ms. Dahlberg actually achieved her desired goal: she suggested to the jury that DuBois was either mistaken in his estimates regarding time and distance or that DuBois had travelled beyond the accident site during the period in question.[2] True, the district court did not allow Johnson to state an ultimate conclusion that DuBois's account was *impossible*, but we think it unlikely that Johnson would have testified that DuBois's testimony was truly impossible in any event; Johnson merely believed that DuBois's account was "a bit of a stretch." *Id*. at 993.

Ms. Dahlberg also faults the district court for refusing to allow her to develop her physical-impossibility theory while cross-examining DuBois. Yet the record shows that the district court did no such thing. On cross-examination, Ms. Dahlberg asked DuBois just two questions relating to closing speed and distance: First, given relative speeds, she asked DuBois, "How fast would that put you in relation to [the Dahlbergs and O'Brien]?" App. vol. 7, at 1453. Second, she asked DuBois if he was "able to testify how close or [sic] your speed relative to each other?" *Id.* Unsurprisingly, Defendants twice objected to form, and the district court sustained the objections. Ms. Dahlberg made no attempt to rephrase and asked no further questions on this subject, such as whether DuBois might have been farther away than he thought when he first saw the trucks or if he had observed

---

[2] We doubt these two points did much to discredit DuBois because both are consistent with his testimony. DuBois testified to approximate (not definite) distances and he never even testified at trial as to how long he observed the trucks. Plus, even if the 10–15 seconds figure was correct, DuBois freely admitted that he travelled beyond the accident site, observing the final events through his rearview mirror.

them for just a few seconds before passing them. On this record, we think Ms. Dahlberg alone is to blame for not "counteract[ing] the impact" of DuBois's testimony with her physical-impossibility theory. Appellant's Br. 65.

Apart from arguing that the district court thwarted her two attempts to discredit DuBois, Ms. Dahlberg argues that the district court created a "double standard" when it allowed Defendants' expert, J.T. Hayes, to testify that DuBois's testimony was *not* physically impossible. But we disagree that the court applied any kind of double standard in allowing Hayes to offer limited testimony that he didn't "know why [DuBois] couldn't see [the accident]." App. vol. 8, at 1593. While the district court limited Johnson's testimony under Rule 26, it had no occasion to do so for Hayes' testimony. This is because Ms. Dahlberg never objected to Hayes' physical-possibility testimony under Rule 26.

Finally, we reject Ms. Dahlberg's argument that the district court's rulings led to a one-sided record, the prejudice of which was "heightened by the fact that Defendants then proceeded to criticize [Ms. Dahlberg's] expert, Mr. Johnson, for not having addressed whether the testimony of Mr. DuBois was physically possible." Appellant's Br. at 65. To the extent the record favored one side over another, we think this was simply because DuBois offered persuasive eyewitness testimony. Defense counsel was free to highlight the importance of this testimony and to argue that none of Ms. Dahlberg's witnesses (including Johnson) had addressed it. We are not aware of any rule that limits a litigant from calling attention to material omissions in an expert's testimony—even if those omissions might not have existed but for enforcement of Rule 26.

### 1.2 Computer Animations

Ms. Dahlberg also challenges the district court's exclusion of two computer animations depicting the accident, both of which she disclosed just before trial. We find no abuse of discretion in the district court's exclusion of these exhibits.

We have recognized the value of exhibits that summarize data contained in other exhibits and that present the evidence in a "simpler form." *United States v. Downen*, 496 F.2d 314, 321 (10th Cir. 1974). Demonstrative aids may be effective in illustrating relevant information to a jury, assuming a proper foundation is laid. *Sanchez v. Denver & Rio Grande W. R.R.*, 538 F.2d 304, 306 (10th Cir. 1976). In assessing foundation in this context, courts consider (among other things) whether the proffered demonstrative exhibit "fairly and accurately summarize[s] previously admitted competent evidence." *Wilson v. United States*, 350 F.2d 901, 907 (10th Cir. 1965). Put another way, to be truly *demonstrative*, an exhibit must actually *demonstrate* something else.

For the most part, the demonstrative label doesn't much matter. Any and all proffered evidence (demonstrative or not) is admitted or excluded based on the same rules of evidence. *See Lillie v. United States*, 953 F.2d 1188, 1190 (10th Cir. 1992) ("[A]ny kind of presentation to the jury or the judge to help the fact finder determine what the truth is and assimilate and understand the evidence is itself evidence.") For example, a demonstrative exhibit will be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, a propensity to mislead, or needlessly cumulative presentation. *See* Fed. R. Evid. 403. Rules applying to expert testimony similarly apply across the board; "*any exhibits* that will be used to summarize or support"

an expert opinion must be included in a timely expert report. Fed. R. Civ. P. 26(a)(2)(B)(iii) (emphasis added).

Ms. Dahlberg claims that the district court misconstrued her exhibits as expert reconstructions rather than demonstrative aids. She asserts that the animations were not being offered to express an expert opinion, but rather "to make [Johnson's] testimony clear." Appellant's Br. 58. From her perspective, it is irrelevant whether she disclosed the exhibits under Rule 26 or whether Johnson previously opined about the relative movement of the trucks or their impact. Ms. Dahlberg argues that the animations should have been admitted for the simple reason that they accurately depicted other evidence— that is, the highway patrol diagram and data from the engine control module (ECM) in O'Brien's tractor-trailer.

At the outset, we disagree that the animations fairly and accurately depicted the highway-patrol diagram and the ECM data. Johnson testified that he created the animations using a diagram prepared by Defendants' accident-reconstruction expert, J.T. Hayes—not the police diagram. It appears to us that the animations depict something other than what Ms. Dahlberg claims.

Foundation issues aside, we are also unpersuaded that the district court abused its discretion in excluding the exhibits under Rule 26. Under this rule, unless a court order says otherwise, any exhibit that "summarize[s] or support[s]" an expert opinion must be disclosed well in advance of trial. *See* Fed. R. Civ. P. 26(a)(2)(B)(iii), (D). Again, Ms. Dahlberg does not argue that she disclosed the computer animations in compliance with

Rule 26, but instead claims that Rule 26 was simply inapplicable because the exhibits did not summarize or support Johnson's testimony.

We fail to see how the animations didn't support Johnson's testimony but still managed "to make [Johnson's] testimony clear." Appellant's Br. at 58. Regardless, the district court viewed the animations and concluded that their admission would amount to Johnson offering a surprise reconstruction of the accident. One animation graphically showed the movements (including the "time/distance calculations") of O'Brien's truck, App. vol. 6, at 1101, and the other showed the interaction between the two trucks, "where that takes place, time/distance analysis between those two, as well as speeds involved," *id.* at 1103. If admitted, the court concluded, these exhibits would not simply illustrate other evidence but would in fact convey Johnson's undisclosed opinions (as a self-proclaimed "accident reconstructionist") about how the accident occurred. App. vol. 5, at 962. After viewing the animations ourselves, we cannot say that the district court abused its discretion in reaching this conclusion.

The problem with allowing the undisclosed opinions, of course, is that Defendants had no notice that Johnson would testify about the mechanics of the accident. *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006) ("The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial."). Johnson was not designated to offer opinions regarding the relative movement and

collision of the trucks—as the district court noted.[3] Nor was there any mention of a reconstruction or animation in Johnson's expert report. Without some justification or indication that Ms. Dahlberg's late disclosure was harmless, the district court was free to exclude the exhibits. *See* Fed. R. Civ. P. 37(c)(1); *Jacobsen*, 287 F.3d at 953 ("[A] district court can allow evidence violating Rule 26(a) only if the violation was justified or harmless ….").

## 1.3  Seat Belt Use

Ms. Dahlberg also argues that the district court abused its discretion by repeatedly allowing Defendants to "emphasize to the jury the fact that Mr. Dahlberg was not wearing a seat belt." Appellant's Br. at 60. She claims that the repeated seat-belt references violated New Mexico's Safety Belt Use Act. *See* N.M. Stat. Ann. § 66-7-373(A) (West 2008) ("Failure to be secured … by a safety belt as required by the Safety Belt Use Act shall not in any instance constitute fault or negligence and shall not limit or apportion damages."). We reject her argument for three reasons.

First, the district court hardly allowed Defendants to "emphasize" that Mr. Dahlberg was not wearing his seat belt. Defendants mentioned "seat belt" in the presence of the

---

[3] Johnson's designated opinions were confined to the following: (1) it was windy on the day of the accident; (2) Mr. Dahlberg and O'Brien were both driving too fast for conditions; (3) O'Brien's vehicle caused a wind shadow, rather than a "wind suck;" (4) there was no physical evidence to determine if either vehicle encroached into the other lane; (5) Ms. Dahlberg's account of O'Brien's encroachment into the passing lane was consistent with the physical evidence; (6) Mr. Dahlberg's evasive maneuver (combined with the wind) could result in loss of control and the subsequent rollover; (7) the gouge mark on the road was consistent with this; and (8) O'Brien did not slow his vehicle as the Dahlbergs were passing him but steered to the right and then, a short time later, abruptly decelerated by applying the brakes.

jury exactly one time, and the district court sustained Ms. Dahlberg's objection. On another occasion, Defendants asked the attending physician why Mr. Dahlberg was "unrestrained." And again, Ms. Dahlberg's objection was sustained. All other references and questions were confined to Mr. Dahlberg's "ejectment" from the truck. Notably, Ms. Dahlberg did not object when Defendants first asked about ejectment. She even agreed that some questioning about ejectment was "fair game." App. vol. 5, at 959. In fact, according to the record, Ms. Dahlberg's own admitted exhibits featured numerous references to ejectment—and even to Mr. Dahlberg's nonuse of his seat belt.

Second, the district court minimized the impact of the few references to seat belts and restraints in exhibits and in the remarks of counsel. Midtrial, it allowed Ms. Dahlberg to redact references to seat belts from her exhibits (including some already published to the jury). The court also instructed the jury that it could not consider the attorneys' remarks and arguments as evidence.

Third, New Mexico's Safety Belt Use Act says only that a person's failure to be secured by a safety belt "shall not in any instance constitute fault or negligence and shall not limit or apportion damages." N.M. Stat. Ann. § 66-7-373(A) (West 2008). Here, the jury never reached Mr. Dahlberg's comparative fault or damages because it found that O'Brien was not negligent. Mr. Dahlberg's failure to use his seat belt had no bearing on O'Brien's negligence. Accordingly, we believe the references to ejectment were—at most—harmless. *See Jenkins v. Gen. Motors Corp.*, No. 93-6286, 1994 WL 413286, at *1 (10th Cir. Aug. 9, 1994) (finding any error in admission of evidence concerning plaintiffs' failure to use seat belts harmless where seat belts similarly played no role in the verdict).

-14-

### 1.4 Officer Patty's Testimony

Ms. Dahlberg further argues that the district court allowed responding Police Officer Carl Patty to testify in violation of Federal Rules of Evidence 701 and 702. She claims that Defendants presented Officer Patty as a lay witness but that he testified as an expert. Ms. Dahlberg specifically challenges Officer Patty's testimony that (1) the safe speed of travel at the time of the accident was 75 miles per hour, and (2) he found no driver error on the part of O'Brien. She asserts that neither of these opinions was based on Officer Patty's firsthand knowledge, but rather on his expertise as a police officer.

We find no abuse of discretion in the admission of Officer Patty's testimony under Rule 701. That rule permits a lay witness to offer opinion testimony only if three criteria are satisfied. The testimony must be (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. "The perception requirement stems from F.R.E. 602 which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact." *United States v. Bush*, 405 F.3d 909, 916 (10th Cir. 2005) (internal quotation marks omitted). The non-scientific-knowledge requirement, in turn, prohibits lay witnesses from expressing opinions as to matters "which are beyond the realm of common experience and which require … special skill and knowledge." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011). If a witness's testimony "results from a process of reasoning which can be mastered only by specialists in the field," it is

expert testimony subject to expert disclosure requirements. Fed. R. Evid. 701 advisory committee's note (2000 Amend.); *see United States v. Yeley–Davis*, 632 F.3d 673, 684 (10th Cir. 2011). By channeling testimony that is actually expert testimony to Rule 702, the rules ensure that a party will not evade the expert witness disclosure requirements by disguising an expert witness as a layperson. Fed. R. Evid. 701 advisory committee's note (2000 Amend.).

Unquestionably, Defendants did not follow Rule 26(a)'s expert-disclosure requirements regarding Officer Patty's testimony because he was not designated to testify as an expert. The dispositive question, therefore, is whether Officer Patty's testimony about the safe speed of travel and lack of driver error was based on his special skill and knowledge as a police officer (as Ms. Dahlberg claims) or on his firsthand perceptions (as Defendants claim). If it was the former, then the testimony was improperly admitted under Rule 701.

As for Officer Patty's testimony about speed, we believe a close reading of the trial transcript shows that his testimony was based on his perception, not his special skill and knowledge. First, Officer Patty testified: "That day, most traffic was traveling about the speed limit so I would say safe speed would be determined to be 75 miles an hour." App. 1483. This testimony was based on Officer Patty's firsthand perceptions as a highway motorist on the day of the accident, and it resulted "from a process of reasoning familiar in everyday life," not one that could be "mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee note (2000 Amend.); *see Yeley–Davis*, 632 F.3d at 684. True, Officer Patty's testimony went beyond a simple reporting of the general speed of

travel; he testified that 75 miles per hour was a *safe* speed. Still, in this case at least, we think the safe-speed opinion was not based on special police training but on simple observations that could have been made by a lay witness.

As for Officer Patty's testimony about driver error, he stated the following:

> Q. Now, Officer, based on your personal observations, your perceptions and your investigation of the physical evidence, what driver error did you find on the part of my client, Dan O'Brien?
> . . . .
> A. I found no violations of the statutes by that driver.
> Q. Based on your observations, your perceptions and your investigation, what violations or citations did you issue to my client, Dan O'Brien?
> A. None.
> . . . .
> Q. Based on your observations, your perceptions and investigation, what did you indicate on your report for my client as far as apparent contributing causes?
> . . . .
> A. No defects.
> Q. No driver error?
> A. No driver error.

App. vol. 7, at 1483–84. Ms. Dahlberg argues that this testimony also falls outside the scope of Rule 701. According to her, Officer Patty's testimony amounted to an opinion about who was responsible for the accident—a responsibility that "falls squarely within the scope of a police officer's special expertise." Appellant's Br. at 75.

Even assuming Officer Patty's driver-error testimony went beyond the scope of Rule 701, we think that any error in admitting those opinions was harmless. While Officer Patty testified that he did not report that either driver had erred, he also testified that there was no physical evidence to contradict Ms. Dahlberg's version of events. On cross-examination, Ms. Dahlberg clarified that Officer Patty was not present during the accident and that traffic citations are governed by the criminal code, not civil negligence

law. We think the jury appropriately weighed Officer Patty's testimony in light of this context. Moreover, apart from the disputed testimony, there was ample evidence to suggest that O'Brien did not commit any driving errors. O'Brien himself testified that there was nothing he could have done to avoid or prevent the accident, and the only eyewitness (DuBois) corroborated this testimony. Indeed, apart from Ms. Dahlberg, no witness testified that O'Brien had done anything wrong, including Kevin Johnson—Ms. Dahlberg's own expert.

### 1.5 Evidence of Training

Next, Ms. Dahlberg challenges the district court's refusal to allow her to cross-examine O'Brien about his training in accident prevention and wind safety. At trial, Ms. Dahlberg sought permission to introduce MCT's training materials into evidence and "to cross-examine [O'Brien] on those documents." App. vol. 8, at 1515. The district court denied permission, citing its earlier rulings on training—including, seemingly, its pretrial dismissal of the negligent-training claim against MCT. By implication, the court ruled that the training evidence was only relevant to this dismissed claim and was not relevant for any other purpose. Ms. Dahlberg argued otherwise, telling the court that her cross-examination would show that O'Brien "ignored even the training he was given." *Id.* at 1517. The district court stood by its ruling.

We assume without deciding that Ms. Dahlberg's proffered training evidence was relevant to her negligence claim against O'Brien. But even if the district court abused its

discretion by excluding this evidence, a new trial is not warranted because any error was harmless.

Ms. Dahlberg argues otherwise and claims that she was prejudiced by the exclusion of the training evidence in two respects. First, she says the training materials would have established the "specific steps that [O'Brien] could have taken to prevent the accident." Appellant's Br. at 69 Even assuming this much, however, we fail to see how Ms. Dahlberg was prejudiced by the district court's ruling. There were a number of ways Ms. Dahlberg could have established the actions that O'Brien should have taken—i.e., those comporting with standards of ordinary care under the circumstances. For example, Ms. Dahlberg could have introduced this evidence through an expert witness or through other driver manuals and guidelines not specific to MCT's training. What's more, the jury instructions defined "ordinary care" and told the jury to find O'Brien negligent if he "encroached on Mr. Dahlberg's lane" or if he "was operating his vehicle at a speed too fast for windy conditions." App. vol. 8, at 1675–76. To the extent Ms. Dahlberg hoped to show that staying within one's lane and driving at a safe speed were the "specific steps" O'Brien should have taken to avoid the accident, she didn't need the training materials to do so.

Second, Ms. Dahlberg says she was prejudiced by the exclusion of the training materials because they "would have been used to refute a key piece of evidence—Defendant O'Brien's assertion that there was nothing he could have done to prevent the accident." Appellant's Br. at 69–70 (emphasis omitted). All Ms. Dahlberg needed to do to refute this testimony, however, was to ask O'Brien about the various things he could have

done differently. Indeed, Ms. Dahlberg did in fact ask a few questions of this variety. She asked O'Brien if he could have slowed down, to which O'Brien responded that he didn't know at what point slowing down would have made a difference. She also asked if he could have decided not to drive in such high winds, and O'Brien said he could have. But beyond this, Ms. Dahlberg posed no other alternate courses of action so as to persuade the jury that O'Brien was to blame. If the training materials contained other steps that O'Brien could and should have taken, we do not understand why Ms. Dahlberg didn't simply ask O'Brien if those steps were available to him and why he chose not to take them.

Furthermore, despite the assumed relevance of the training materials, we think that they were properly excludable on alternate grounds under Federal Rule of Evidence 403. 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2885, at 629–30 (3d ed. 2012) ("Even though the ground on which the evidence was rejected is unsound, the error is harmless if the evidence clearly was inadmissible on some other ground."); *see Lutz v. Weld Cnty. Sch. Dist. No. 6*, 784 F.2d 340, 344–45 (10th Cir. 1986) (finding any error in the district court's basis for excluding evidence harmless and irrelevant since Rule 403 "provided an adequate ground for exclusion"). Because the district court seemingly concluded that the training materials were *not* relevant, it had no need to consider whether their "probative value [was] substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. But after reviewing the training materials ourselves, we think the probative value of this evidence was

substantially outweighed by many of these dangers. Much of the information in the 60-plus pages of training materials related to tractor-trailer rollovers, something that didn't occur here. The materials also showed accident statistics, the physics of rollovers, numerous contributing factors to accidents (including alcohol and poor vision), the costs associated with accidents, and several photographs of unrelated accidents and roadways. From our perspective, much of this evidence would have posed a real danger of unfair prejudice to Defendants or confusion of the issues.[4]

### 1.6 Guntharp's Testimony

Finally, we address Ms. Dahlberg's challenge to the district court's exclusion of her designated trucking-industry expert, Walter Guntharp. With this challenge, Ms. Dahlberg faults the district court for circular reasoning: she argues that the court dismissed the negligent-training and negligent-supervision claims against MCT for lack of evidentiary support, but excluded Guntharp's designated testimony supporting those claims solely because the claims had been dismissed. "Thus," she asserts, "the dismissal was based upon the lack of evidence, while the exclusion of the pertinent evidence was based upon the dismissal." Appellant's Br. at 54.

The real issue underlying Ms. Dahlberg's challenge is whether the district court properly dismissed the negligent-training and negligent-supervision claims. Again, Ms. Dahlberg argues that because the district court should have allowed her claims against

---

[4] Some of this information could have been redacted. But Ms. Dahlberg did not urge redaction at trial and instead argued for the wholesale admission of MCT's training materials.

MCT to go forward, it should also have allowed Guntharp's testimony "in support of those claims." *Id.* Yet, apart from arguing that Guntharp's testimony was relevant to the improperly dismissed claims, Ms. Dahlberg does not argue that the district court's exclusion was improper. Put another way, if the district court properly dismissed the negligent-training and negligent-supervision claims, Ms. Dahlberg gives us no reason to think that the district court was wrong in excluding Guntharp.

It is indeed true that the district court excluded some of Guntharp's designated testimony—three opinions to be precise—because those opinions were only relevant to claims that had been dismissed.[5] It is also true that two of these excluded opinions supported Ms. Dahlberg's claims for negligent training and negligent supervision; Guntharp opined that (1) MCT's decision to allow O'Brien to drive alone after two months of experience was inappropriate and dangerous, and (2) this decision was particularly egregious since it was still wintertime when driving conditions could be adverse.[6] Had the negligent-training and negligent-supervision claims survived, we might question the district court's decision to exclude this relevant testimony.

---

[5] The district court excluded Guntharp's three other designated opinions for other reasons, none of which Ms. Dahlberg challenges on appeal.

[6] It's unclear if Ms. Dahlberg also challenges the district court's exclusion of Guntharp's designated opinion that O'Brien was in violation of Federal Motor Safety Carrier Regulation 395.14 (which requires extreme caution in hazardous conditions). If so, we fail to see how this opinion is relevant to MCT's alleged negligence in training and supervising O'Brien. Indeed, the district court did not exclude this testimony on these grounds, but rather because it was irrelevant to other previously dismissed portions of the complaint having to do with O'Brien's alleged fault. Again, Ms. Dahlberg only challenges the dismissal of the direct-negligence claims against MCT on appeal.

-22-

But those claims didn't survive, and as we discuss below, the jury's verdict rendered any error the district court might have made in dismissing those claims harmless. Because the jury found that O'Brien was *not* negligent, there is no way it could have properly found that MCT was—even if the negligent-training and negligent-supervision claims had gone to trial. No amount of testimony from Guntharp about MCT's fault in allowing O'Brien to drive alone would have properly changed the jury's finding that O'Brien was not at fault on the day of the accident. (And Ms. Dahlberg does not argue otherwise.) Accordingly, Ms. Dahlberg's challenge to the exclusion of Guntharp's testimony is without merit because it rests on the existence of another claimed error that was, at most, harmless.

## 2. The Negligent-Training and Negligent-Supervision Claims Against MCT

Long before trial, Defendants filed a motion to dismiss certain paragraphs of Ms. Dahlberg's complaint under Rules 11 and 12(b)(6). The district court granted the motion, finding that the paragraphs lacked evidentiary support and a factual basis. While the court did not expect Ms. Dahlberg to produce evidence in response to the motion to dismiss, it did not believe that she had provided sufficient assurance that her contentions complied with Rule 11. The district court then denied Ms. Dahlberg's motion to reconsider and clarified that it had not imposed Rule 11 sanctions but had dismissed portions of the complaint "due to an apparent lack of factual basis" under Rule 12(b)(6). App. vol. 1, at 158. The court said it might reconsider its ruling if and when Ms. Dahlberg could demonstrate with particularity the factual basis for the dismissed paragraphs. But despite

later motions from Ms. Dahlberg, the district court did not change its mind. From its perspective, the negligent-training and negligent-supervision claims against MCT were "not supported by the evidence, not genuinely in dispute, and not worthy of the jury's time." App. vol. 4, at 632.

On appeal, Ms. Dahlberg challenges the district court's dismissal of paragraph 37 of her complaint, which she asserts "stated claims against Defendant MCT for negligent training and supervision of Defendant O'Brien." Appellant's Br. at 16. She contends that the district court applied the wrong standard and improperly considered evidence outside the pleadings, effectively converting the motion to dismiss into a motion for summary judgment without notice. These errors were compounded, she claims, when the court failed to reconsider despite later-produced evidence in support of MCT's negligence.

We can understand why Ms. Dahlberg might be confused by the district court's dismissal. But even if the district court's ruling was confusing, it does not follow that Rule 12(b)(6) dismissal was improper. Because our review is de novo, *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010), our only concern on appeal is with the sufficiency of the complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that failing to convert a Rule 12(b)(6) motion to a motion for summary judgment will not constitute reversible error if "the dismissal can be justified without considering the outside materials"). Even if we were to disagree with the district court's reasoning, we might still agree that the paragraphs at issue were properly dismissed. *See United States v. Holmes*, 727 F.3d 1230, 1233 (10th Cir. 2013) ("Our general rule is that we may affirm a district court judgment on a basis different from that

employed by the district court, assuming that the alternate basis is consistent with the record.").

But in this case, we choose not to consider whether the paragraphs at issue were properly dismissed under Rule 12(b)(6). We make that choice because regardless of whether the negligent-training and negligent-supervision claims were properly dismissed, the jury's no-negligence verdict as to O'Brien forecloses the possibility that Ms. Dahlberg could have succeeded on those claims. As we have recognized, "we need not resolve whether a pre-verdict dismissal of a claim was proper if the jury's verdict on the remaining claims shows that any error in failing to present the dismissed claim to the jury was harmless." *Abbasid, Inc. v. First Nat'l Bank of Santa Fe*, 666 F.3d 691, 696 (10th Cir. 2012).

Again, to have found O'Brien negligent, the jury had to find at least one of the following: (1) that O'Brien had encroached on Mr. Dahlberg's lane; (2) that O'Brien was operating his vehicle at a speed too fast for the windy conditions; (3) that O'Brien failed to exercise ordinary care at all times to prevent an accident; or (4) that O'Brien failed to maintain proper control of his vehicle so as to avoid placing himself or others in danger and to prevent an accident. Because the jury did not find O'Brien negligent, however, the jury necessarily concluded that O'Brien had not done any of these things. He did *not* encroach on Mr. Dahlberg's lane, he did *not* operate his vehicle at a speed too fast for windy conditions, he did *not* fail to exercise ordinary care, and he did *not* fail to maintain proper control of his vehicle.

Given this, we fail to see how Ms. Dahlberg could possibly show (and how the jury could possibly find) that the Dahlbergs' injuries were caused by any deficient training or supervision on the part of MCT. Even if MCT did nothing to train or supervise O'Brien, O'Brien's driving comported with standards of reasonable care on the day of the accident. At most, the jury's verdict might suggest that O'Brien was not negligent *in spite of* his employer's poor management practices. But because O'Brien was not negligent, there is no causal link between any presumed negligence on the part of MCT and the harm ultimately suffered by the Dahlbergs. This of course is fatal to Ms. Dahlberg's negligent-training and negligent-supervision claims because causation is a required element of both claims under New Mexico law. *See Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 165 (N.M. Ct. App. 2007) ("'A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct *if the harm was caused by the principal's negligence* in selecting, training, retaining, supervising, or otherwise controlling the agent.'" (emphasis added) (quoting Restatement (Third) of Agency § 7.05(1) (2006))); *see also* N.M. Uniform Civil Jury Instructions 13-1647 (Negligence in hiring, supervising, retaining an employee).

Despite the jury's verdict, Ms. Dahlberg argues that her inability to present the negligent-training and negligent-supervision claims was prejudicial. First, she contends that these claims were not "derivative," meaning they did not depend on the underlying liability of O'Brien. In this way, she argues her direct-negligence claims against MCT differ from vicarious liability claims in the respondeat superior context—where the employer is only liable to the extent that its employee or agent is liable. "Thus," she

argues, "a finding of negligence against the employee is not a necessary prerequisite to a claim for negligent training and supervision." Reply Br. at 10.

Ms. Dahlberg is correct that New Mexico courts recognize a distinction between vicarious liability based on imputed liability and claims based on direct negligence in which an employer is allegedly to blame for its own tortious conduct. An employer is obviously not liable absent negligence on the part of its employee in the vicarious-liability context, but New Mexico courts have not explicitly said the same when the plaintiff claims that the employer is liable for fault of its own. *See Valdez v. R-Way, LLC*, 237 P.3d 1289, 1292 (N.M. Ct. App. 2010) ("[B]ecause Defendant's liability was imputed solely based on the negligent conduct of [its employee], without fault of its own, the release of [the employee] removed the basis on which Defendant's fault was being imputed.").

That said, Ms. Dahlberg has not identified—nor are we aware of—a single case in which a plaintiff was able to sustain a negligent-training or negligent-supervision claim against an employer without some actionable misconduct on the part of the employee who caused the injury. In fact, our survey of New Mexico caselaw suggests that negligent-training and negligent-supervision claims depend on underlying employee wrongdoing.[7] In any event, we need not hold that an employee's tortious conduct is a

---

[7] *See, e.g.*, *EEOC v. MTS Corp.*, 937 F. Supp. 1503, 1515 (D.N.M. 1996) ("An employer may be liable in tort for negligent retention, supervision, and training *for the wrongful conduct of an employee* even though the employer is not responsible for such acts under the doctrine of respondeat superior.") (emphasis added); *Lessard*, 168 P.3d at 157 (alleging employer was directly negligent in hiring an unsafe driver, whom plaintiffs had also sued for negligence); *Los Ranchitos v. Tierra Grande, Inc.*, 861 P.2d 263, 269

prerequisite to employer negligence in every case alleging inadequate training or supervision in order to find that an *absence* of such conduct is dispositive here.

Ms. Dahlberg's only other point is that the jury made no special finding that O'Brien did not cause her injuries. The jury simply concluded that O'Brien was not negligent. "For all we know," Ms. Dahlberg asserts, "the jury concluded that Defendant O'Brien *did* cause Plaintiff's injuries." Reply Br. at 9 (emphasis added). Assuming what Ms. Dahlberg suggests—that the jury believed O'Brien caused the accident with his nonnegligent conduct—then it's possible that MCT could have prevented the accident by somehow preparing O'Brien to perform above and beyond what we expect of ordinary and reasonable truck drivers. But while we may hope that people perform in extraordinary ways while driving on our highways, we do not require this sort of extraordinary conduct under the law.

## CONCLUSION

We find no error in the district court's evidentiary rulings that would entitle Ms. Dahlberg to a new trial on her negligence claim against O'Brien. Because we conclude that the jury's no-negligence verdict stands as to O'Brien, we also conclude that the

---

(N.M. Ct. App. 1993) (alleging negligent supervision and retention where employer gave employee access to plaintiff's funds after it knew, or should have known, that the employee was embezzling money and plaintiff also sued employee); *Valdez v. Warner*, 742 P.2d 517, 519–21 (N.M. Ct. App. 1987) (reversing directed verdict for employer on negligent-hiring and negligent-retention claims where there was evidence that employer knew about employee's violent behavior before it hired him and the plaintiff sued the employee for assault).

-28-

pretrial dismissal of the negligent-training and negligent-supervision claims against MCT was harmless. We affirm the district court's judgment.

ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge